## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILIP R. SHAWE and | ) | |
| SHIRLEY SHAWE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ROBERT B. PINCUS, ESQ., in his | ) | |
| Official capacity as court-appointed | ) | |
| custodian, and | ) | |
| JEFFREY W. BULLOCK, in his | ) | |
| official capacity as Secretary of | ) | |
| State for the State of Delaware, | ) | |

Defendants.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Plaintiffs, Philip R. Shawe ("Shawe") and Shirley Shawe ("Ms. Shawe") (together, "Plaintiffs" or "the Shawes"), as and for their Complaint allege as follows:

1.     This is an action for declaratory and injunctive relief to redress and prevent violations of the Shawes' rights secured by the Due Process and Takings Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. As construed by the Delaware Supreme Court and the Delaware Court of Chancery ("Chancery"), and as applied in non-final interlocutory decisions, 8 *Del. C*. § 226 authorizes the unconstitutional taking of the Shawes' personal property – their ownership of 50% of the stock in TransPerfect Global, Inc. ("TPG") – without a

00371304

public use or public purpose, and without prior notice, and deprives Shawe's right to pursue the livelihood of his choice and to which he has devoted the past 25 years of his life – the creation and building of TPG from a dorm-room start-up when he was 22 years old, to a more than half-billion dollar enterprise.

2.     This action arises out of a purely private party business dispute between Shawe and non-party Elizabeth Elting ("Elting") over management of TPG, a Delaware corporation, which is currently the subject of ongoing litigation between the Shawes and Elting in the Delaware state courts.   The State of Delaware is not a party in that litigation, and has made no claim to the Shawes' personal property for public use or for a public purpose to benefit the people of the State of Delaware.

3.     In unprecedented interlocutory decisions in August 2015, and June and July 2016, affirmed by the Delaware Supreme Court on February 13, 2017, the Delaware Court of Chancery ("Chancery") construed 8 *Del. C.* § 226 ("Section 226") for the first time to authorize Chancery to force stockholders of a Delaware corporation, against their will, and in violation of the United States Constitution, to offer for sale to other private parties their personal property – shares of stock in that corporation – and forcibly to transfer that personal property directly to another private party, unless the stockholder participates in and outbids all other prospective buyers for the remaining stock in a court-ordered auction process open

00371304

to any private party bidders.

4.     Section 226 as construed to authorize both the forced offering for sale and the potential forced transfer of the Shawes' TPG stock (the "Forced Sale") – renders that statute unconstitutional as applied to the Shawes' property, in violation of the Public Use requirement of the Takings Clause, and of the Shawes' Due Process rights.

## JURISDICTION

5.     Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 for violations of the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

7.     The Delaware state court proceedings are ongoing, and no final state court judgment has been entered concerning the Forced Sale.

8.     Although the State's taking of the Shawes' personal property has not yet been completed, this action is ripe for adjudication of the constitutionality of Section 226, as applied to authorize the compelled transfer of a person's shares of stock in a Delaware corporation to another private person, because, absent judicial relief, the unconstitutional taking will occur in the next several months.

00371304

3

9.     Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2).

10.     This Court has personal jurisdiction over all Defendants.

## PARTIES

11.     Plaintiff Philip R. Shawe is a resident and citizen of the State of New York, is the owner of 49 shares of stock (49%) of TPG, a Delaware corporation, which Shawe co-founded with Elting, and is a director and a co-CEO of TPG.

12.     Plaintiff Shirley Shawe, a 76 year-old retiree, is a resident and citizen of the State of Florida, is the owner of one (1) share of stock (1%) of TPG, and is the mother of Philip Shawe.  She is not, and never has been, an officer, director, or employee of TPG or any of its affiliated companies.

13.     Defendant Robert B. Pincus is an attorney and partner of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), in Skadden's Wilmington, Delaware office, and the Custodian ("the Custodian") appointed by Chancery pursuant to Section 226 to conduct the Forced Sale and to carry out the unconstitutional taking of the Shawes' property in TPG, and to act as a tie-breaking third director of TPG pending the Forced Sale.  The Custodian, whom Chancery has purported to grant "judicial immunity" "to the fullest extent permitted by law," is a state actor and is acting under color of law within the meaning of 42 U.S.C. § 1983 concerning the matters alleged herein.

00371304

4

14.     Defendant Jeffrey W. Bullock is the Secretary of State of the State of Delaware, and is named as a Defendant in his official capacity.  If the Forced Sale of TPG takes the form of a merger or consolidation, Defendant Bullock would be required to perform the mandatory duties set out in 8 *Del. C.* § 103 for the Forced Sale to be effective under Delaware law.

15.     Non-party Elizabeth Elting is a resident and citizen of the State of New York and is the owner of 50 shares of stock (50%) of TPG, and is a director and co-CEO of TPG.  Elting initiated the Delaware state court proceedings to obtain a non-contractual windfall buy-out of her interest in TPG through the forced sale of the Shawes' TPG stock to the highest bidding private party.

### FACTS

16.     TPG is a Delaware corporation with its headquarters in New York, New York.

17.     TPG wholly owns TransPerfect Translations International, Inc. ("TPI"), a New York corporation, which is TPG's main operating company (TPG and its subsidiaries are collectively referred to as "the Company").

18.     Shawe and Elting are the co-founders, co-Chief Executive Officers, and prior to the appointment of the Custodian, the sole members of the board of directors of TPG since TPG's incorporation in Delaware in 2007.

19.     Shawe and Elting co-founded the business that became TPG in 1992,

when they lived together in a dormitory room while graduate students at the Stern School of Business at New York University.

20.    The Company has grown to become one of the world's leading providers of translation, website localization, and litigation support services, and in early 2015, had 92 offices worldwide, employed more than 3,500 full-time employees, with a network of more than 10,000 translators, editors, and proofreaders working in approximately 170 different languages.

21.    Today, the Company employs approximately 4,000 full-time employees, with over 100 offices throughout the world.

22.    The Company is highly profitable, with 2014 revenues of more than $470 million, increasing to $545 million in 2016, and with total net profits from 2013-2016 of over $260 million.

23.    Shawe has devoted the past 25 years of his life, since age 22, to building TPG into an extraordinarily successful, thriving, extremely profitable, more than half-billion dollar company.

24.    Ms. Shawe's share of TPG stock is her only substantial asset.

25.    Both when TPG was incorporated in 2007, and thereafter, Shawe and Elting chose not to enter into any form of buy-sell agreement or to implement an agreed exit mechanism or other agreement for ownership disposition.

26.    As a result, Elting owns only what she negotiated for – a 50% non-

00371304

6

controlling interest in TPG, with no right to be bought out and no contractual ability to obtain a control premium for her shares, but with no restrictions on her right to sell her shares to any third party, and no non-competition or non-solicitation restrictions upon her exit from the Company.

27.    Likewise, the Shawes together own a 50% non-controlling interest in TPG, with no right to be bought out and no contractual ability to obtain a control premium for their shares, and with no restrictions on their right to sell their shares to any third party.  Like Elting, Shawe has no non-competition or non-solicitation restrictions upon his exit from the Company.

28.    The Company has no offices in Delaware.

29.    The Company is not engaged in providing any services or activities essential, or even related, to public health or safety in Delaware or elsewhere, nor is TPG essential to the economic well-being of the State of Delaware.

30.    The Company has no debt, with no threat of insolvency or bankruptcy, or creditors in need of State protection.

31.    Under the Delaware General Corporate Law ("DGCL"), shares of stock in a Delaware corporation are explicitly defined as "personal property."  *See* 8 *Del. C*. § 159 ("The shares of stock in every corporation shall be deemed personal property….").

32.    The Shawes' ownership of shares of TPG stock is a protected property

interest under Delaware law and the United States Constitution.

**The Ongoing Delaware Litigation**

33.    Commencing in approximately 2012, Shawe and Elting engaged in management disputes driven by Elting's increasing demands for substantially larger profit distributions and a buy-out from Shawe.

34.    On May 8, 2014, Elting commenced an action in New York State Supreme Court, seeking to remove Shawe as an officer and director of TPI, the New York operating company, and to dissolve TPI.

35.    Elting obtained a TRO in the New York action that effectively froze Shawe out of the Company's payroll, but the New York Court subsequently vacated the TRO, and denied Elting's request for a preliminary injunction and dissolution on August 4, 2014, finding that her disputes with Shawe amounted to "squabbles."

36.    The New York action remains pending, but has been stayed in favor of the ongoing Delaware state court proceedings.

37.    On May 23, 2014, Elting filed a petition against the Shawes in the Delaware Court of Chancery that, after several amendments, sought the appointment of a custodian based on alleged director deadlock and an order to sell TPG, pursuant to 8 *Del. C.* § 226(a)(2).   As discussed further below, Chancery granted that relief over the Shawes' objections.  *See In re Shawe & Elting LLC, et*

*al.,* 2015 WL 4874733 (Del. Ch. Aug. 13, 2015) (hereinafter "Aug. 13 Interlocutory Decision").

38.     In addition to the petition to forcibly sell TPG under 8 *Del. C.* § 226(a)(2), on December 11, 2014, Elting filed a petition in Chancery that sought the appointment of a custodian or receiver under 8 *Del. C.* § 226(a)(1) to resolve shareholder deadlock, which Chancery also granted in the Aug. 13 Interlocutory Decision.

39.     Section 226 provides in relevant part:

(a)     The Court of Chancery, upon application of any stockholder, may appoint 1 or more persons to be custodians, and, if the corporation is insolvent, to be receivers, of and for any corporation when:

(1) At any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors; or

(2)     The business of the corporation is suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation that the required vote for action by the board of directors cannot be obtained and the stockholders are unable to terminate this division; ….

(b) A custodian appointed under this section shall have all the powers and title of a receiver appointed under § 291 of this title, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets, except when the Court shall otherwise order and except in cases arising under paragraph (a)(3) of this section or § 352(a)(2) of this title….

40.     No Delaware court had previously ordered, pursuant to Section 226,

the forced sale of a stockholder's stock in a Delaware corporation over the stockholder's objection.

41.     Nothing in the text of Section 226 expressly authorizes the forced sale of a stockholder's stock in a profitable Delaware corporation.

42.     Elting also sought the "equitable dissolution" of TPG, which Chancery denied because Elting failed to establish any breaches of fiduciary duty by Shawe. 2015 WL 4874733, at *33-35. Elting also alleged and prosecuted breach of contract and breach of fiduciary duty claims against Shawe, but abandoned them post-trial.  Elting also sought dissolution of TPG under 8 *Del. C.* § 273, which she abandoned prior to trial.

43.     In granting Elting's request to order the Forced Sale of the Shawes' stock in TPG in the Aug. 13 Interlocutory Decision, Chancery expressly found that Elting intended to be a seller of her interest in TPG, not a buyer of the Shawes' interests, stating, "[t]he record does show that Elting has expressed a desire to be bought out and acted improperly at times to pursue that goal." *Id*., at *28.

44.     In justifying the forced sale of the Shawes' personal property – their 50 shares of TPG stock – Chancery stated that "it would be unjust to leave Elting with no recourse except to sell her 50% interest in the Company"– all that Elting is contractually entitled to – whereas, according to Chancery, the Forced Sale would grant Elting a "fair price for her shares." *Id*. at *31.

00371304

45.     What Chancery calls a "fair price for her shares" is in fact an unbargained-for windfall benefit to Elting in the form of a control premium for her shares, which comes only through a buyer obtaining a controlling stake in TPG, and which Elting can only realize through the Forced Sale.

46.     Other than Elting's personal interest in selling her TPG stock at a substantially higher price than the market would pay based on what she had obtained at the bargaining table, the only other interest Chancery identified as justifying the Forced Sale belonged to TPG, stating that through the Forced Sale, "Shawe and Elting can be separated and *the enterprise can be protected* from their dysfunctional relationship…. Shawe and Elting need to be separated from each other in the management of the Company for *its own good*. Their dysfunction must be excised *to safeguard the Company*." *Id*. (emphasis added).

47.     Although Chancery explained that forcing the Shawes to sell their TPG stock would give *Elting* the windfall benefit of an unbargained-for "fair price" for her stock, Chancery never explained why the Forced Sale was necessary to protect *TPG*, given that Shawe and Elting could be "separated from each other" by, *inter alia*, Elting selling her shares to any interested party at the price the market set, and Chancery made no finding that Shawe and Elting could only be "separated from *each other*" by also forcing the Shawes to be separated from their ownership of TPG by the Forced Sale of their TPG stock.

48.     Chancery identified no public use or public purpose for its Forced Sale that would be cognizable under the Takings Clause, and identified only two private parties, Elting and TPG (the latter of which is owned by Elting and the Shawes), as the intended beneficiaries of the Forced Sale.

49.     In the Aug. 13 Interlocutory Decision, Chancery also appointed Defendant Pincus "as a custodian to oversee a judicially ordered sale of the Company. In the interim, I appoint Mr. Pincus to serve as a third director with the authority to vote on any matters on which Shawe and Elting cannot agree and which rise to the level that he deems to be significant to managing the Company's business and affairs."  2015 WL 4874733, at *32.

50.     Chancery ordered the Custodian to prepare a proposed plan of sale of "the Company with a view toward maintaining the business as a going concern and maximizing value for the stockholders."  *Id*.

51.     Chancery did not "otherwise order" the Custodian "to liquidate [TPG's] affairs and distribute its assets," pursuant to 8 *Del. C.* § 226(b), and made no findings that liquidation of TPG would be an appropriate or necessary remedy, or one authorized by the statute under the circumstances.  As noted, Chancery specifically rejected Elting's request for equitable dissolution.

52.     Chancery also issued an interlocutory implementing order on August 13, 2015, instructing the Custodian to "report to the Court concerning a proposed

00371304

plan of sale…" and ordering that "[t]he Custodian and [Skadden and] its partners and employees … are entitled to judicial immunity and to be indemnified by TPG, in each case, to the fullest extent permitted by law." *In re Transperfect Global, Inc.*, 2015 WL 4778615, at *1, ¶¶ 8-9 (Del. Ch. Aug. 13, 2015).

53.    On August 24, 2015, the Shawes moved for entry of final judgment or certification of an interlocutory appeal and a stay pending appeal.   Chancery denied the motion for interlocutory appeal on September 15, 2015, and denied the motion for entry of final judgment and stay on September 18, 2015.

54.    On September 28, 2015, the Delaware Supreme Court issued an order denying certification for interlocutory review of the Aug. 13 Interlocutory Decision and Order.  *Shawe v. Elting*, 2015 WL 5720403, at *1 (Del. Sept. 28, 2015).

55.    On February 8, 2016, the Custodian submitted his "Plan of Sale for a Modified Auction" ("Plan of Sale"), which recommended a public auction process open to any interested person, in which the stockholders (with or without affiliation with third parties) could participate as buyers, but were required to participate as sellers, *i.e.,* the Shawes would be forced to offer their TPG stock for sale and for direct transfer to the highest bidder.

56.    Under the Plan of Sale, the only way the State of Delaware, through Chancery, would permit the Shawes to retain their ownership of their stock in TPG would be if the Custodian determined that Shawe had prevailed against all other

00371304

bidders through an offer for Elting's 50% interest in TPG. If not, Chancery would order the forced transfer of their TPG stock directly from the Shawes to a private third party (or, if Elting were to bid and prevail, to Elting).

57.     As a practical matter, Ms. Shawe, a 76-year old retiree with a 1% ownership interest in TPG, has no practical ability to participate in the public auction for TPG as a buyer and, therefore, is forced by Chancery to participate only as a seller of her personal property to the highest bidder (unless the Custodian determined that Shawe had prevailed and Shawe chose not to purchase Ms. Shawe's share).

58.     The Custodian also proposed that Chancery authorize the Custodian to impose an uncompensated non-competition restriction on Shawe and Elting, which would make TPG more valuable by transferring the value that the market would pay for the non-competition restriction from the shareholders to TPG.

59.     Because the value to TPG of a noncompetition restriction on Shawe is substantially greater than a similar restriction on Elting, the Custodian sought to transfer to TPG substantially more value belonging to Shawe than Elting.

60.     Elting supported the Plan of Sale in its entirety, including the proposed uncompensated non-competition agreement.

61.     The Shawes remained opposed to the Forced Sale, but if there was to be a Forced Sale, objected to the public auction Plan of Sale, explaining that given

00371304

the size and complexity of TPG and the risks and length of time involved, including the obvious one of a "busted auction," the most cost-effective, efficient and value-maximizing plan would be a sale process between the existing shareholders within a fair value range.

62.    Shawe also opposed the uncompensated non-competition restriction as an unconstitutional taking without just compensation and a violation of his Due Process liberty and property rights.

63.    In an effort to resolve the dispute without further litigation, including over the unconstitutional taking of his property, on May 25, 2016, Shawe filed with the Delaware court a fully executable, all cash, no contingencies offer, with a three-year flip protection, to purchase Elting's 50% interest for $300 million (placing a $600 million valuation on TPG), and requested that Chancery order the parties to mediation.  Elting rejected the offer and rejected mediation, and on June 1, 2016, Chancery denied the request for mediation.

64.    By an interlocutory letter decision of June 21, 2016, Chancery accepted the Custodian's proposed Plan of Sale for a Modified Auction, other than the proposed uncompensated non-competition restrictions.  *In re TransPerfect Global, Inc.,* 2016 WL 3477217 (Del. Ch. June 21, 2016).

65.    Neither the Plan of Sale nor Chancery's June 21 letter decision adopting it identified any public use or public purpose in transferring the Shawes'

stock from the Shawes to another private party, or in forcing the Shawes to offer their stock to the highest bidder.

66.     On July 11, 2016, the Custodian submitted a proposed implementing Order For Custodian to Undertake a Sale Process, to which the Shawes objected. On July 18, 2016, Chancery signed the Proposed Order exactly as requested by the Custodian (the "Sale Order"). *In re Transperfect Global, Inc.*, 2016 WL 3949840 (Del. Ch. July 18, 2016).

67.     The interlocutory Sale Order expressly recognized the requirement for further proceedings in Chancery and the right of appeal to the Delaware Supreme Court from any decision approving the auction results.  Thus, the Sale Order granted the Custodian "full and exclusive authority to explore, negotiate, document, recommend to the Court and implement (subject to the Court approval of the recommendation) a Sale Transaction" (Para. 1).  The Sale Order also provided that "[t]he consummation of the transactions contemplated by the Definitive Sale Agreement shall be expressly conditioned upon and subject to the approval of the Court" (Para. 18(a)); and that the stockholders could object to the proposed Definitive Sale Agreement and appeal from "an order implementing the Court's approval of the Agreements." (Para. 18(c)-(e)).

68.     In the Sale Order, Chancery retained jurisdiction of "[a]ll interim actions, recommendations and decisions of the Custodian (taken prior to the

00371304

16

consummation of the Sale Transaction"), and of any "applications" from the Custodian (Paras. 15, 19).

69.   The Sale Order granted the Custodian "full and exclusive authority to determine the winning bidder of the Modified Auction." (Para. 3).

70.   The Sale Order granted the Custodian and Skadden "judicial immunity" "to the fullest extent permitted by law."  (Para. 16).

71.   The Sale Order provided that the Forced Sale "may take the form of a merger transaction, a stock purchase transaction or any other form of similar transaction…." (Para. 1).

72.   If the Forced Sale is in the form of a merger or consolidation, then, pursuant to 8 *Del. C.* § 251(c), the merger or consolidation agreement "shall then be filed and *shall become effective*, in accordance with § 103 of this title. In lieu of filing the agreement of merger or consolidation required by this section, the surviving or resulting corporation may file a certificate of merger or consolidation, executed in accordance with § 103 of this title."   (Emphasis added).   The agreement or certificate "shall be delivered to the office of the Secretary of State." 8 *Del. C.* § 103(c)(1).  *See also* 8 *Del. C.* §§ 252(c), 254(d), 257(c).

73.   In connection with the mandatory delivery of that instrument, Defendant Bullock, as Secretary of State, would be required to perform certain mandatory duties to make the merger or consolidation transaction complete and

effective pursuant to 8 *Del. C.* § 103(c), including:

> (2) [a]ll taxes and fees authorized by law to be collected by the Secretary of State in connection with the filing of the instrument shall be tendered to the Secretary of State; and (3) Upon delivery of the instrument, the Secretary of State shall record the date and time of its delivery. Upon such delivery and tender of the required taxes and fees, the Secretary of State shall certify that the instrument has been filed in the Secretary of State's office by endorsing upon the signed instrument the word "Filed", and the date and time of its filing. … The Secretary of State shall file and index the endorsed instrument. … (8) The Secretary of State shall cause to be entered such information from each instrument as the Secretary of State deems appropriate into the Delaware Corporation Information System or any system which is a successor thereto in the office of the Secretary of State, and such information and a copy of each such instrument shall be permanently maintained as a public record on a suitable medium.

74.     In addition, Defendant Bullock is required to "collect and deposit in a separate account established exclusively for that purpose" both "a county assessment fee with respect to each filed instrument," and "a courthouse municipality fee," "and shall thereafter weekly remit from such account[s]" those fees to the respective counties and municipalities, as specifically provided in 8 *Del. C.* § 103(c)(5)-(7).

75.     8 *Del. C.* § 103(d) provides, "Any instrument filed in accordance with subsection (c) of this section *shall be effective* upon its filing date."  (Emphasis added).

76.     On August 18, 2016, Chancery granted the Shawes' motion for interlocutory appeal of its interlocutory Forced Sale orders, and granted a limited

stay during the pendency of the interlocutory appeal of those parts of the Sale Order to which the Custodian consented to a stay.

77.    On August 23, 2016, the Delaware Supreme Court "ORDERED that this interlocutory appeal is ACCEPTED."

78.    On February 13, 2017, the Delaware Supreme Court issued its decision on the "interlocutory appeal," affirming by a 4-1 vote Chancery's "August 13, 2015 opinion and July 18, 2016 order, and the related orders." *Shawe v. Elting,* 2017 WL 563963, at *1, 14 (Del. Feb. 13, 2017).  The Delaware Supreme Court issued its mandate on March 1, 2017.

79.    The Delaware Supreme Court did not address the merits of the Shawes' argument that Chancery's interlocutory orders constituted an unconstitutional taking without a public use or public purpose, on the ground the issue had not been raised in Chancery.

80.    The Delaware Supreme Court also found that the Shawes had not raised the argument that 8 *Del. C.* § 226 did not authorize the Forced Sale and held that argument was waived.

81.    Nevertheless, that Court analyzed section 226 and construed that section to authorize Chancery to forcibly transfer one person's private party – stock in a Delaware corporation – directly to another private party, albeit technically in dictum.  *Id.* at *8-11.

00371304

82.   Justice Valihura filed a dissent.  In her view, the Shawes' "statutory arguments [concerning Section 226] are fairly encompassed within Shawe's explicit arguments below," were not waived, and Section 226 could not be construed to authorize the Forced Sale.  *Id.* at \*14 n.3).

83.   The Dissent recognized that "[t]he 'takings' argument presents novel issues of first impression," but did not reach that issue because it construed Section 226 in a manner that avoided the constitutional question.  *Id*. at \*15.

84.   In concluding that Section 226 did not authorize the Forced Sale, the Dissent explained:

> Examples [under the DGCL] where a stockholder is forced to give up her shares have one thing in common—the relevant statutory provisions expressly contemplate that situation and *provide fair notice* that it may occur. Here, Section 226 contains no such express provision *or notice* of such potential forced divestiture. I know of no situations in the DGCL where a forced sale of stock can occur *absent fair notice*, and the Majority cites to none. The absence of authority grounded in the statute, the conceded absence of any similar cases under Section 226, and our common law's strong preference for the least intrusive remedies in cases involving court-appointed custodians suggest that the Chancellor went too far too fast in ordering the Modified Auction."

*Id.* (emphasis added).

85.   The Dissent carefully contrasted Section 226 with several statutes in the DGCL that explicitly provide for a forced sale of a stockholders' stock under carefully circumscribed situations, which, unlike Section 226, provided "fair notice" of the possibility of a sale of stock without stockholder consent, such as in

00371304

certain mergers and consolidations, concluding, "In contrast to each of the provisions above, Section 226 contains no language that suggests that a court-ordered custodian has the power to compel a forced disposition of a stockholder's personal property (stock)." *Id.* at *19.

86.    The Dissent further explained, "The words 'otherwise order' [in section 226(b)] do not constitute adequate notice that a stockholder could be forced to sell her holdings in a forced auction of a thriving company," *id*. at *24 n.65, and that other language in that subsection "cannot reasonably be read to authorize the forced sale of a solvent corporation to a third party over the objections of its stockholders," *id.* at *22 n.52.

87.    The Dissent concluded:

> my construction of Section 226 takes account of *property rights and due process protections* because I believe these concepts are embedded in the relevant statutory framework. This is evident in Section 159's express statement that *stock is personal property*, and in the other provisions of our statutory framework that *provide clear and express notice* in situations where defeasance of that property right might occur. That is why, in reading our statutory scheme harmoniously, it is compelling not to imply the power of the Court to issue an order that can result in defeasance of these rights over the objections of the owners."

*Id.* at *28 (emphasis added).

88.    On January 18, 2017, in yet another effort to resolve the dispute without further litigation, including over the forced taking of his property, Shawe requested by letter that Chancery modify the Plan of Sale pursuant to a Term Sheet

00371304

21

that was provided to the Court, to which Elting objected. The substance of the proposed modification, including the sequence that led to the Term Sheet, and the Term Sheet itself, are under seal in the Chancery proceedings.

89. After "the Custodian [did] not recommend the proposed modifications over Ms. Elting's objections," Chancery canceled a previously scheduled conference, and stated that the proposed modification was not warranted, and that applications to modify any of Chancery's orders should be by formal motion. *In re TransPerfect Global, Inc.*, 2017 WL 477646, at *1 (Del. Ch. Feb. 6, 2017).

90. On March 1, 2017, the Shawes filed a motion in Chancery requesting that Chancery adopt the proposal to modify the Plan of Sale. Again, the substance of the proposed modification, including the sequence that led to the Term Sheet, and the Term Sheet itself, are under seal in the Chancery proceedings.

91. On March 8, 2017, Chancery denied the motion, and stated:

> the Sale Order requires that the consummation of any transaction "shall be expressly conditioned upon and subject to the approval of the Court." It also sets forth a process for the parties to submit at that time any objections to the sale process or the terms of a proposed transaction, which the Court will then consider and after which the parties may pursue appellate review. Accordingly, the Shawes and Ms. Elting will have the opportunity in the future to present any good faith objections they wish to make to the sale process and any proposed transaction that results therefrom.

*In re TransPerfect Global, Inc.*, 2017 WL 923457, at *1 (Del. Ch. March 8, 2017).

92. Upon information and belief, the Custodian's opposition to the

proposal to modify the Plan of Sale following Elting's objections indicates that the Custodian, who is being advised by sophisticated deal counsel at Skadden and by bankers at Credit Suisse, believes that a third party is likely substantially to outbid Shawe for TPG in an open auction, which thereby substantially increases the likelihood that the Shawes will be forced to transfer their TPG stock directly to a private person for the benefit of Elting.

93.    With the issuance of the Delaware Supreme Court's mandate, the August 18, 2016 limited stay is no longer in effect.  The unconstitutional Forced Sale process is moving forward and, upon information and belief, the auction process may commence in approximately two months and be completed within several months thereafter.

94.    The Delaware Legislature has not authorized or approved the Forced Sale of the Shawes' stock in TPG, including the direct transfer of that private property from the Shawes to another private person.

95.    The Delaware Legislature has made no findings that the Forced Sale of the Shawes' TPG stock directly to another private person serves a public purpose or public use.

96.    The Delaware Legislature has conducted no study as to whether the Forced Sale of the Shawes' TPG stock directly to another private person serves a public use or public purpose.

00371304

97.    The Delaware Legislature has had no role in devising the Plan of Sale, and will have no role in the Plan of Sale, or any other role in the forced transfer of the Shawes' property to another private party.

98.    The Delaware Legislature has not delegated the State's eminent domain powers to Chancery to take the Shawes' property specifically for forced transfer to another private person, or delegated the eminent domain power generally in Section 226 to take private parties' ownership of stock in Delaware corporation for forced transfer to another private person.

99.    No Delaware State agency has reviewed or approved the Plan of Sale, or otherwise has reviewed or approved the forced transfer of the Shawes' property to another private party.

100.    Neither the Delaware Legislature nor any Delaware State agency has identified any public use or public purpose in the forced transfer of the Shawes' property to another private party.

101.    The State of Delaware has not taken any action to take the Shawes' personal property through eminent domain condemnation proceedings provided by Delaware law for the taking of personal property.

102.    Chancery received no testimony or documentary evidence from Delaware officials concerning whether the forced transfer of the Shawes' personal property directly to other private persons would confer a benefit on the public.

00371304

103.   The proposed one-to-one transfer of the Shawes' personal property directly to another private person is not part of an integrated administrative or legislative plan to achieve a public use or public purpose for that property.

104.   According to the Aug. 13 Interlocutory Decision, the purpose of the forced transfer of the Shawes' personal property to another private person is to provide a benefit to Elting, a private person, in order to give her "a fair price for her shares," and to benefit TPG, a private corporation (and which is owned solely by Elting and the Shawes) "for its own good."

105.   Neither Chancery nor the Delaware Supreme Court identified any public use or public purpose in the new private owner's future use of the Shawes' property.

106.   The forced transfer of the Shawes' personal property directly to another private person is not for any future use by the public or future benefit to the public, but is solely for the benefit of the private parties identified by Chancery – Elting and TPG.

107.   The new owner's future use of the Shawes' property will be for a purely private purpose, and will not benefit the public at large.

108.   Neither Chancery nor the Delaware Supreme Court identified any benefits to the public that will be achieved by the forced transfer of the Shawes' personal property directly to another private person.

00371304

109.   There is no legislative, executive or judicial finding that the forced transfer of the Shawes' property directly to another private person has the purpose and expected effect of conferring substantial benefits on the public at large.

110.   There is no legislative, executive or judicial finding that the Shawes' continued ownership of their TPG stock inflicted affirmative harm on the public; rather, the only findings were judicial findings of harm or potential harm to private parties, TPG and Elting.

111.   The State of Delaware's generalized interest in regulating the internal affairs of Delaware corporations, including any general interest it may have in providing a generally applicable statutory mechanism for addressing shareholder or director deadlock of a solvent, profitable corporation, is not a public use or public purpose cognizable under the Takings Clause, as applied to taking the specific private property at issue, the Shawes' TPG stock.

112.   Although Chancery found that "[i]t stands to reason [TPG] would be more profitable but for the systemic dysfunction that exists between its two directors and co-CEOs," 2015 WL 4874733, at *28, the possibility that another private person might put the Shawes' private property to more productive use is not a public use or public purpose cognizable under the Takings Clause.

## FIRST CAUSE OF ACTION

**For Violations of the Fifth and Fourteenth Amendments Under 42 U.S.C. § 1983 (Unconstitutional Taking)**

00371304

26

113. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 112 above with the same force and effect as if fully set forth herein.

114. 8 *Del. C.* § 226, as construed by the Delaware courts, authorizes the Court of Chancery to order the forcible transfer of personal property – shares of stock in a Delaware corporation – from the stockholder to another private person.

115. A court-ordered forcible transfer of one person's private property directly to another person constitutes a "taking" within the meaning of the Takings Clause of the Fifth Amendment to the U.S. Constitution, made applicable to the States by the Fourteenth Amendment.

116. Section 226, as construed by the Delaware courts, authorizes the taking of the private property – stock in a Delaware corporation – of one shareholder and its transfer to another private person without a public use or public purpose within the meaning of the Takings Clause of the Fifth Amendment.

117. A court-ordered transfer of privately held shares of stock directly to another private person in order to benefit other shareholders or the private corporation, authorized by 8 *Del. C.* § 226 as construed by the Delaware courts, does not constitute a public use or a public purpose within the meaning of the Takings Clause of the Fifth Amendment.

118. 8 *Del. C.* § 226, as construed by the Delaware courts and as applied to the Shawes, is unconstitutional in that it authorizes a taking of their private

00371304

property – their TPG stock – for the benefit of other private persons, without a public use or public purpose, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

119.   Pursuant to the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and 28 U.S.C. § 2201, the Shawes are entitled to a Declaration that 8 *Del. C.* § 226 as applied to authorize Chancery to order the Forced Sale and transfer of the Shawes' shares of stock in TPG directly to another private person is unconstitutional.

120.   Pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting the Defendant Custodian from conducting any sale process that could result in the Shawes, over their objection, being required to transfer their shares of stock in TPG to another private person.

121.   Pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting Defendant Bullock, as Secretary of State, from performing any of the duties imposed by 8 *Del. C.* § 103(c) in connection with any sale process that requires the Shawes, over their objection, to transfer their shares of stock in TPG to another private person.

## SECOND CAUSE OF ACTION

00371304

**For Violations of the Fifth and Fourteenth Amendments Under 42 U.S.C. § 1983 (Unconstitutional Taking)**

122.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 121 above with the same force and effect as if fully set forth herein.

123.   8 *Del. C.* § 226, as construed by the Delaware courts, authorizes the forced offering for sale of personal property – shares of stock in a Delaware corporation – to the highest bidder, in situations of private party deadlock in the management of a privately owned corporation, in order to benefit other stockholders and the private corporation.

124.   A court-ordered forced offering for sale of privately held shares of stock in a corporation to the highest bidder constitutes a taking of private property, even if the stockholder ultimately prevails in a forced sale process.

125.   A court-ordered forced offering for sale of privately held shares of stock in a private corporation to the highest bidder, authorized by 8 *Del. C.* § 226 as construed by the Delaware courts, in order to benefit other stockholders or the corporation, does not constitute a public use or a public purpose within the meaning of the Takings Clause of the Fifth Amendment, even if the stockholder ultimately prevails in a forced sale process.

126.   8 *Del. C.* § 226, as interpreted by the Delaware courts and as applied to the Shawes, is an unconstitutional taking, in that it authorizes a court to force a stockholder to offer for sale his shares of stock to the highest bidder, for the benefit

00371304

of other private persons and without a public use or public purpose, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

127.   Pursuant to the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and 28 U.S.C. § 2201, the Shawes are entitled to a Declaration that 8 *Del. C.* § 226 as applied to require the Shawes to offer their shares of stock in TPG for sale to the highest bidder, even if Shawe ultimately prevails in a forced sale process, is an unconstitutional taking without a public use or public purpose.

128.   Pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting the Custodian from conducting any sale process that requires the Shawes, over their objection, to offer for sale their shares of stock in TPG to the highest bidder.

129.   Pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting Defendant Bullock, as Secretary of State, from performing any of the duties imposed by 8 *Del. C.* § 103(c) in connection with any merger or consolidation sale process that requires the Shawes, over their objection, to offer for sale their shares of stock in TPG to another private person.

### THIRD CAUSE OF ACTION

00371304

**For Violations of the Fifth and Fourteenth Amendments Under 42 U.S.C. §
1983
(Procedural Due Process)**

130. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1
through 112 above with the same force and effect as if fully set forth herein.

131. 8 *Del. C.* § 226(b), as construed by the Delaware courts for the first
time in the state court proceedings involving the Shawes, authorizes the taking of
the Shawes' property – shares of stock in TPG – and transfer to the highest bidding
private party, without prior notice to the Shawes that their private property could
be so taken and transferred.

132. 8 *Del. C.* § 226(b), which makes no mention of any judicial authority
to order the sale of a stockholders' stock, but, as construed by the Delaware
Supreme Court, authorizes a forced sale of a stockholders' stock instead of
"continu[ation] of the business" whenever Chancery "shall otherwise order," is
unconstitutionally vague, because it provides no standards or conditions under
which Chancery may "otherwise order" a forced sale of personal property, instead
of continuation of the business.

133. The taking and transfer of the Shawes property directly to another
private party pursuant to Section 226 without prior notice that that statute
authorized such taking and transfer, and without any statutory standards for such

00371304

31

taking and transfer, constitutes a deprivation of the Shawes' property without Due Process in violation of the Fourteenth Amendment to the U.S. Constitution.

134.   Pursuant to the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and 28 U.S.C. § 2201, the Shawes are entitled to a Declaration that 8 *Del. C.* § 226(b), as construed and applied to the Shawes in the state court proceedings, violated the Shawes' constitutional right to statutory notice that Chancery is authorized by section 226(b) to take their shares of stock in a thriving, profitable Delaware corporation against their will, and transfer them to the highest bidder in an open auction, and is unconstitutionally vague.

135.   Pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting the Custodian from conducting any sales process that requires the Shawes, over their objection, to offer for sale or to transfer their shares of stock in TPG to the highest bidder.

136.   Pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, the Shawes are entitled to a preliminary and permanent injunction prohibiting Defendant Bullock, as Secretary of State, from performing any of the duties imposed by 8 *Del. C.* § 103(c) in connection with any sale process that requires the Shawes, over their objection, to transfer their shares of stock in TPG to another private person.

## FOURTH CAUSE OF ACTION

### For Violations of the Fifth and Fourteenth Amendments Under 42 U.S.C. § 1983
### (Substantive Due Process, Philip R. Shawe Only)

137.   Plaintiff Shawe repeats and realleges the allegations set forth in paragraphs 1 through 112 above with the same force and effect as if fully set forth herein

138.   Shawe has devoted his entire working career, since the age of 22 in 1992 to creating, building, and managing TPG and its predecessors, from a dorm room start up to a $545 million company, the second largest translations services company in the world.

139.   Shawe has a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment to continue to pursue the livelihood to which he has devoted the past 25 years, virtually his entire adult life.

140.   Chancery found no breaches of fiduciary duty by Shawe owed to the Company or Elting, and rejected Elting's petition for equitable dissolution based on allegations of Shawe's misconduct.  Elting, after trial, abandoned all her claims of breach of fiduciary duty against Shawe.

141.   The State of Delaware lacks any compelling or substantial interest in forcing Shawe to surrender his life's work in creating, building and managing TPG in order to address his disputes with Elting over the direction of a private profitable

corporation.

142.   There are numerous and obvious less restrictive and more narrowly tailored means to address director or stockholder deadlock at TPG than the State of Delaware, through Chancery, forcing Shawe out of TPG and taking away his livelihood, including that Elting, the party seeking to exit from TPG, is unencumbered in her right and ability to sell her shares in TPG, or to resign from TPG and continue to receive 50% of the profit distributions.

143.   Chancery's Forced Sale, which will effectively force Shawe out of TPG if a third party prevails in the Court-ordered auction, violates Shawes' right to pursue his livelihood in violation of his liberty interests protected by the Due Process Clause of the Fourteenth Amendment.

144.   The hypothetical possibility that Shawe could continue as an employee at TPG after the Forced Sale cannot cure the fundamental liberty violation, as there is no realistic chance that Shawe will continue at TPG as an employee after its Forced Sale to another private person.

145.   Pursuant to the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. § 1983, and 28 U.S.C. § 2201, Shawe is entitled to a Declaration that 8 *Del. C.* § 226, as construed and applied to him in the state court proceedings, would violate Shawe's constitutional right to liberty if he is ordered to transfer his shares in TPG to another private person.

146.   Pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, Shawe is entitled to a preliminary and permanent injunction prohibiting the Custodian from conducting any sales process that would require Shawe, over his objection, to transfer his shares of stock in TPG to another private person.

147.   Pursuant to the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, Shaw is entitled to a preliminary and permanent injunction prohibiting Defendant Bullock, as Secretary of State, from performing any of the duties imposed by 8 *Del. C.* § 103(c) in connection with any sale process that requires Shawe, over his objection, to transfer his shares of stock in TPG to another private person.

WHEREFORE, Plaintiffs demand:

1.   A declaratory judgment that 8 *Del. C.* § 226 as construed by the Delaware courts, is unconstitutional as applied to the Shawes to authorize Chancery to order the taking of their shares of stock in TPG for transfer directly to another private person;

2.   A declaratory judgment that 8 *Del. C.* § 226 as construed by the Delaware courts, is unconstitutional as applied to the Shawes to authorize Chancery to order the taking of the Shawes shares of stock in TPG for transfer directly to another private person, by requiring the Shawes to offer their TPG stock

00371304

for sale to the highest bidder;

3.     A preliminary and permanent injunction prohibiting the Defendant Custodian from conducting a sale process pursuant to 8 *Del. C.* § 226 to the extent that it requires the Shawes to offer their shares of stock in TPG for sale to other private parties, or that it results in a transfer of the Shawes' shares of stock in TPG to another person.

4.     A preliminary and permanent injunction prohibiting Defendant Bullock as Secretary of State from performing any of the duties imposed by 8 *Del. C.* § 103 in connection with any sale process that requires the Shawes to transfer their shares of stock in TPG to another person.

5.     Reasonable attorneys' fees and costs.

6.     Such other and further relief as the Court deems just and proper.


**FINGER AND SLANINA, LLC**                    **COOCH AND TAYLOR, PA**

*/s/David L. Finger*                            */s/Jeremy D. Eicher*
David L. Finger (I.D. # 2556)                   Jeremy D. Eicher (I.D. # 5093)
One Commerce Center                             The Brandywine Building
1201 North Orange Street, 7th Floor             1000 West Street, 10th Floor
Wilmington, Delaware  19801                     Wilmington, Delaware 19801
Telephone: (302) 572-2525                       Telephone: (302) 984-3800
*Attorneys for Plaintiff*                       *Attorneys for Plaintiff*
*Philip R. Shawe*                               *Shirley Shawe*

Co-Counsel:

00371304

David B. Goldstein, Esquire
Eric M. Lieberman, Esquire
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
61 Broadway, 18th Floor
New York, New York 10006
(212) 254-1111
dgoldstein@rbskl.com
elieberman@rbskl.com
*Attorneys for Plaintiff Philip R. Shawe*

Adam K. Grant, Esquire
POLSINELLI PC
600 3rd Ave
New York, NY 10016
Telephone:   (212) 413-2833

AND

Alan M. Dershowitz, Esquire
1525 Massachusetts Avenue
Cambridge, MA 02138
*Attorneys for Plaintiff Shirley Shawe*

Dated: March 15, 2017

00371304