IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILIP R. SHAWE and )
SHIRLEY SHAWE, )
                                   )
     Plaintiffs, )
                                   )
     v. )     Civ. No. 17-277-GMS
                                   )
ROBERT B. PINCUS, ESQ., in his official )
capacity as court-appointed custodian, and )
JEFFREY W. BULLOCK, in his official )
capacity as Secretary of State for the State )
of Delaware, )
                                   )
     Defendants. )
                                   )

David L. Finger, Esquire of Finger & Slanina, LLC, Wilmington, Delaware. Counsel for Plaintiff Philip R. Shawe. Of Counsel: David B. Goldstein, Esquire of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York, New York.

Jeremy D. Eicher, Esquire of Cooch & Taylor, PA, Wilmington, Delaware. Counsel for Plaintiff Shirley Shawe.

Douglas D. Herrman, Esquire of Pepper Hamilton LLP, Wilmington, Delaware. Counsel for Defendant Robert B. Pincus. Of Counsel: John K. Villa, Esquire, Charles Davant IV, Esquire, and Anne M. Rucker, Esquire of Williams & Connolly LLP, Washington DC.

Joseph C. Handlon, Esquire, Lauren E. Maguire, Esquire, and Ryan P. Connell, Esquire of State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Jeffrey W. Bullock.

**MEMORANDUM OPINION**

Dated: September 26, 2017
Wilmington, Delaware

SLEET, District Judge

## I. INTRODUCTION

This case concerns state-court litigation in which the Delaware Court of Chancery (the "Chancery Court") ordered the sale of TransPerfect Global, Inc. ("TransPerfect") over the objections of Plaintiffs Philip R. Shawe ("Shawe") and Shirley Shawe ("Ms. Shawe," and collectively the "Shawes" or "Plaintiffs"). Plaintiffs are two of the three stockholders of TransPerfect. The third stockholder, Elizabeth Elting ("Elting"), supports the sale. Defendants are the court-appointed custodian responsible for overseeing the sale of TransPerfect (the "Custodian") and the Delaware Secretary of State (the "Secretary," and collectively, the "Defendants"). The Secretary was not involved in the state-court litigation, but may be statutorily required to take certain administrative actions in the future if the sale is in the form of a merger or consolidation. Plaintiffs' claims, brought pursuant to 42 U.S.C. § 1983, seek: (1) a declaratory judgment that the court-ordered sale violates the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and (2) an injunction prohibiting Defendants from carrying out their duties to effectuate with the sale.

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Currently before the court are Defendants' motions to dismiss. (D.I. 11; D.I. 14; D.I. 31; D.I. 32).[1] Defendants have raised a multitude of arguments as to why the complaint should be dismissed, including the *Rooker-Feldman* doctrine, *res judicata*, *Younger* abstention, *Burford* abstention, and

---

[1] While the motions to dismiss (D.I. 11; D.I. 14) were pending, Plaintiffs filed a supplemental complaint (D.I. 30). Afterwards, Defendants filed new motions to dismiss that relied on their original briefs. (D.I. 31; D.I. 32). This memorandum opinion addresses all four motions collectively.

1

the failure to state a claim under Rule 12(b)(6). (D.I. 13; D.I. 15). For the reasons discussed below, the court finds that the complaint should be dismissed pursuant to the *Rooker-Feldman* doctrine. Accordingly, it does not reach Defendants' other arguments.

## II. BACKGROUND

TransPerfect is a Delaware corporation that provides worldwide translation and litigation support services. (D.I. 30 ¶¶ 16, 20). Shawe and Elting are the co-founders, co-Chief Executive Officers, and before the appointment of the Custodian, the sole members of the board of directors. (*Id.* at ¶ 18). In 2014, the Chancery Court consolidated for trial several actions Elting and Shawe had filed against each other in that court. *In re Shawe & Elting LLC*, 2015 WL 4874733, at *24 (Del. Ch. Aug. 13, 2015). Relevant to this action, Elting filed two petitions seeking the appointment of a custodian for TransPerfect pursuant to 8 *Del. C.* § 226(a): one captioned *In re TransPerfect Global, Inc.*, C.A. No. 9700-CB and the other captioned *Elting v. Shawe*, C.A. No. 10449-CB.[2] *Id.* at *18 & *23. After a six-day trial on the merits, the Chancery Court issued an opinion and order (the "Merits Opinion" and "Custodian Order") on August 13, 2015 that, among other things, entered judgment in favor of Elting and against the Shawes on the petitions to appoint a custodian. (BL-1282; BL-1283).[3] The Custodian Order instructed the Custodian to prepare a

---

[2] Section 226(a) provides for the appointment of a custodian when: (1) "the stockholders are so divided that they have failed to elect successors to directors whose terms have expired;" or (2) "[t]he business of the corporation is suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation that the required vote for action by the board of directors cannot be obtained and the stockholders are unable to terminate this division." 8 *Del. C.* § 226(a).

[3] Because the parties did not provide a copy of the state-court docket, the court cites where necessary to the docket provided in Bloomberg Law for the action captioned *In re TransPerfect Global, Inc.*, C.A. No. 9700-CB. These documents are either incorporated into the complaint by reference and/or subject to judicial notice. *Siwulec v. J.M. Adjustment Serv.*, LLC, 465 Fed. App'x 200, 202 (3d Cir. 2012).

2

proposed plan of sale for TransPerfect. (D.I. 30 ¶ 50). On August 24, 2015, the Shawes filed a motion seeking entry of a final judgment or certification of an interlocutory appeal for the Merits Opinion and Custodian Order. (*Id.* at ¶ 53). The Chancery Court denied the motion, because it created the prospect of piecemeal appeals, including later potential challenges to the form of a sale order that remained to be determined. (BL-1352 at ¶ 7; BL-1357).

On February 8, 2016, the Custodian submitted to the Chancery Court a proposed plan of sale (the "Sale Report"). *In re TransPerfect Global, Inc.*, 2016 WL 3477217, at *1 (Del. Ch. June 20, 2016). Elting did not object to the Sale Report, but the Shawes did. *Id.* at *2. Accordingly, the parties fully briefed the issues and the Chancery Court held a hearing on April 27, 2016 to consider the objections. *Id.* On June 20, 2016, the Chancery Court issued a letter opinion, as revised on June 21, 2016 (the "Letter Opinion"), adopting in part and rejecting in part the Shawes' objections, adopting the Custodian's proposed plan of sale with certain modifications, and directing the Custodian to confer with the parties to submit a proposed form of Sale Order consistent with the Letter Opinion. *Id.* at *3-5. On July 1, 2016, the Custodian submitted a proposed form of Sale Order, to which the Shawes filed objections. (BL-1758; BL-1763; BL-1764; BL-1766). On July 18, 2016, the Chancery Court overruled the Shawes' objections on the grounds that they relitigated issues already decided and entered the Sale Order as proposed. (BL-1765; BL-1766).

On July 28, 2016, the Shawes filed a motion seeking certification of an interlocutory appeal of the Merits Opinion, the Custodian Order, the Letter Opinion, and the Sale Order, which the Chancery Court granted. (BL-1773; BL-1774; BL-1863). On appeal, Ms. Shawe argued for the first time that the forced sale of her share violated the Takings and Due Process Clauses of the United States Constitution. *Shawe v. Elting*, 157 A.3d 152, 168 (Del. 2017). Under Delaware

Supreme Court Rule 8, the court "only considers questions fairly presented to the trial court." *Id.* The rule provides a narrow exception if the Delaware Supreme Court finds that "the trial court committed plain error requiring review in the interests of justice." *Id.* On February 13, 2017, the majority opinion of the Delaware Supreme Court found no plain error.[4] *Id.* at *169. Accordingly, Ms. Shawe's constitutional arguments were deemed waived for failure to raise them first in the Chancery Court. *Id.* Shortly thereafter, the Shawes filed a motion in the Chancery Court to amend the Sale Order, which was denied. (BL-1998; BL-2000). A week later, on March 15, 2017, the Shawes filed their complaint in this court claiming that the forced sale of their TransPerfect stock violated the Takings and Due Process Clauses of the United States Constitution. (D.I. 1).

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to the *Rooker–Feldman* doctrine is a challenge to the court's subject matter jurisdiction. *Singleton v. Collins*, 513 Fed. App'x 251, 252, (3d Cir. 2013). Where the court lacks subject matter jurisdiction, it may dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1). *Gary v. Braddock Cemetery*, 517 F.3d 195, 203 (3d. Cir. 2008). Challenges to subject matter jurisdiction may be facial or factual. *Id.* A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Id.* An attack to subject matter jurisdiction based on the *Rooker-Feldman* doctrine is a factual attack. *Nev. First Fed., LLC v. Macciocca*, 2015 WL 4461828, at *2 (E.D. Pa. July 21, 2015); *McCurdy v. Esmonde*, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003). Thus, the court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In

---

[4] One justice issued a dissenting opinion, but still "would not reach" the unconstitutional takings argument. *Shawe*, 157 A.3d at 171.

4

addition, "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## IV. DISCUSSION

The *Rooker-Feldman* doctrine bars federal district courts from hearing cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). The parties dispute whether the Third Circuit has changed the test under *Rooker-Feldman* from "inextricably intertwined" to a four-part test set forth in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). (D.I. 22 at 15-16; D.I. 24 at 5). For the reasons explained below, the court finds that the Third Circuit has not been consistent in instructing lower courts on which test to apply. Accordingly, this court will apply both tests. Under either test, however, the result is the same: The court lacks subject matter jurisdiction to hear Plaintiffs' claims. Finally, the court will address Plaintiffs' argument that *Rooker-Feldman* does not apply to interlocutory orders.

### A. The Appropriate *Rooker-Feldman* Test

In asserting the *Rooker-Feldman* doctrine, Defendants have relied on the inextricably intertwined test. (D.I. 13 at 8-10; D.I. 15 at 7). Under that test, a claim is barred by *Rooker–Feldman*: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action," or (2) "if the federal claim is inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). State and federal claims are inextricably intertwined when: (1) "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered," or (2) "the federal court must ... take action that would render the state court's judgment ineffectual." *Jonas v. Gold*, 627 Fed. App'x 134, 137 (3d Cir. 2015) (*quoting ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 211

5

(3d Cir. 2004)). The current form of the Third Circuit's inextricably intertwined test appears to have been established around the year 2000. *See Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000).

In 2010, five years after the U.S. Supreme Court reversed the Third Circuit in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), a Third Circuit panel decided *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). In *Exxon Mobil*, the Third Circuit relied on *Rooker-Feldman* to dismiss federal litigation proceeding in parallel to state litigation. 544 U.S. at 284. The *Great Western* decision interpreted the reversal in *Exxon Mobil* to mean that "caution is now appropriate in relying on our pre-*Exxon* formulation of the *Rooker–Feldman* doctrine, which focused on whether the state and federal suits were inextricably intertwined." 615 F.3d at 169. Accordingly, *Great Western* set forth a new four-part test providing that *Rooker-Feldman* deprives the court of subject matter jurisdiction when: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Id.* at 166.

From this court's perspective, the U.S. Supreme Court's reversal in *Exxon Mobil* should not be read as a criticism of the inextricably intertwined test. Instead, the Third Circuit simply misapprehended the temporal requirements of *Rooker-Feldman* in that one case. Exxon Mobil had argued that *Rooker-Feldman* did not apply unless the state-court judgment was reached *before* the federal suit was filed, which was not what happened. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 364 F.3d 102, 105 (3d Cir. 2004). In other words, Exxon Mobil compared the timing of the state-court judgment and the federal complaint. The Third Circuit rejected Exxon Mobil's argument, stating that *Rooker-Feldman* only looked at whether the state-court judgment was

6

reached before a federal-court judgment on the same claims. *Id.* Thus, the Third Circuit had focused on the timing of the judgments.

The *Great Western* test effectively remedies the infirmities in the inextricably intertwined test by making clear that the correct temporal comparison is the state-court judgment and the federal complaint. However, *Great Western* goes too far if it is to be read as a complete rejection of the inextricably intertwined test. Both the inextricably intertwined test and the *Great Western* test consider whether plaintiffs are essentially asking a federal court to find that an adverse state-court ruling was reached in error. *Compare Jonas*, 627 Fed. App'x at 137 (stating that claims are inextricably intertwined if "the federal court must determine that the state court judgment was erroneously entered") and *Great Western*, 615 F.3d at 169 (stating that the fourth element is satisfied if the federal court must "determine whether [a state court] reached its result in accordance with the law"). Indeed, several Third Circuit decisions after *Great Western* have warned against relying on the inextricably test while simultaneously affirming dismissals based on that very same test. *See, e.g., Bakshi v. Bergen Cnty. Super. Ct.*, 687 Fed. App'x 215, 218 n. 4 (3d Cir. 2017); *Haagensen v. Wherry*, 610 Fed. App'x 210, 211 n. 5 (3d Cir. 2015); *Reiter v. Wash. Mut. Bank*, 455 Fed. App'x 188, 191 n. 4 (3d Cir. 2011). Those cases demonstrate that the legal underpinnings of the inextricably intertwined test are still valid as long as the temporal component does not run afoul of the problem in *Exxon Mobil*.

Ultimately, *Great Western* did not explicitly hold that the inextricably intertwined test was no longer good law, perhaps recognizing that "no subsequent panel overrules the holding in a precedential opinion of a previous panel." *Reilly v. City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (quoting Internal Operating Procedures of the Third Circuit Court of Appeals § 9.1). Since *Great Western*, Third Circuit decisions under *Rooker-Feldman* have covered the spectrum. As

7

indicated above, some panel decisions have cautioned against use of the inextricably intertwined test while affirming district court decisions relying on the test. *See, e.g., Bakshi,* 687 Fed. App'x at 218 n. 4. Other panel decisions have reversed district court decisions for relying on the inextricably intertwined test. *See, e.g., Mazzetti v. Wood,* 573 Fed. App'x 165, 167 (3d Cir. 2014). Finally, several Third Circuit panel decisions ***after*** *Great Western* have employed the inextricably intertwined test without questioning its validity. *See, e.g., Jonas,* 627 Fed. App'x at 137; *Feingold v. Office of Disciplinary Counsel,* 415 Fed. App'x 429, 431 (3d Cir. 2011); *Easley v. New Century Mortg. Corp.,* 394 Fed. App'x 946, 948 (3d Cir. 2010); *Mayercheck v. Judges of Pa. Sup. Ct.,* 395 Fed. App'x 839, 842, (3d Cir. 2010); *Van Tassel v. Lawrence Cnty. Domestic Relations Sections,* 390 Fed. App'x 201, 203 (3d Cir. 2010).[5] To overrule a precedential panel decision, court *en banc* consideration is required. *Reilly,* 858 F.3d at 177. Until the Third Circuit speaks with one voice, the application of the inextricably intertwined test in precedential panel rulings still stands. As a

---

[5] *Great Western* was not the first Third Circuit case to consider the *Rooker-Feldman* doctrine after the U.S. Supreme Court issued *Exxon Mobil* in March 2005. As a result, there are also numerous Third Circuit panel decisions before *Great Western* but after *Exxon Mobil* that relied on the inextricably intertwined test without questioning its validity. *See, e.g., Parks v. Twp. of Portage,* 385 Fed. App'x 118, 121 (3d Cir. 2010); *Robinson v. Porges,* 382 Fed. App'x 133, 135 (3d Cir. 2010); *Diehl v. Connell,* 382 Fed. App'x 127, 129 (3d Cir. 2010); *Jones v. Unemployment Comp. Bd. of Review,* 381 Fed. App'x 187, 190 (3d Cir. 2010); *Turner v. Children's Hosp. of Phila.,* 378 Fed. App'x 124, 126 (3d Cir. 2010); *Jacobowitz v. M & T Mortg. Corp.,* 372 Fed. App'x 225, 227 (3d Cir. 2010); *In re Madera,* 586 F.3d 228, 232 (3d Cir. 2009); *Koynok v. Lloyd,* 328 Fed. App'x 133, 136 (3d Cir. 2009); *Pondexter v. Allegheny Cnty. Housing Auth.,* 329 Fed. App'x 347, 350 (3d Cir. 2009); *Moncrief v. Chase Manhattan Mortg. Corp.,* 275 Fed. App'x 149, 152 (3d Cir. 2008); *Twenty-Eight Thousand Four Dollars v. Pennsylvania,* 274 Fed. App'x 122, 123 (3d Cir. 2008); *Gary,* 517 F.3d at 206; *Ajjahnon v. New Jersey,* 238 Fed. App'x 769, 770 (3d Cir. 2007); *Korelis v. N.J. Judicial Officials in Ct. Process Action,* 201 Fed. App'x 870, 871 n. 1 (3d Cir. 2006); *Taliaferro v. Darby Tp. Zoning Bd.,* 458 F.3d 181, 192 (3d Cir. 2006); *Barnes v. Domitrovich,* 184 Fed. App'x 164, 166 (3d Cir. 2006); *Kepoint Preservation Trust Org. ex rel. Brown v. Fisher,* 173 Fed. App'x 191, 194 (3d Cir. 2006); *DeSantis v. Franklin,* 160 Fed. App'x 237, 238 (3d Cir. 2005); and *In re Knapper,* 407 F.3d 573 (3d Cir. 2005).

result, this court will analyze *Rooker-Feldman* under both the inextricably intertwined test and the *Great Western* test.

### B. The Inextricably Intertwined Test

As stated above, the inextricably intertwined test bars a claim under *Rooker-Feldman*: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action," or (2) "if the federal claim is inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d at 580. The test is worded in the disjunctive, allowing a claim to be dismissed under either prong. The court finds that Plaintiffs' constitutional claims satisfy the first prong, because they were "actually litigated" in the Delaware state courts before Plaintiffs filed the federal action. The parties briefed and argued before the Delaware Supreme Court whether the forced sale of Ms. Shawe's share "violate[d] the Takings and Due Process Clauses of the United States and Delaware Constitutions." *Shawe*, 157 A.3d at 168. Ultimately, the Delaware Supreme Court declined to address the merits of Plaintiffs' constitutional claims, finding those claims had been waived. *Id.* Nevertheless, this court is aware of no case holding that a claim is not actually litigated because it was rejected on procedural, instead of substantive, grounds.

Even if the first prong of the inextricably intertwined test is not satisfied unless there is a merits ruling, Plaintiffs' federal claims are still barred because they also meet the second prong. Plaintiffs' federal claims are inextricably intertwined with the state adjudication, because they essentially ask this court to enjoin the Chancery Court's implementation of its Sale Order. *Feingold*, 415 Fed. App'x at 431 (finding federal claims inextricably intertwined with a state-court proceeding where plaintiff seeks a federal district court injunction barring enforcement of a state-court order); *Van Tassel*, 390 Fed. App'x at 203 (same). Although the complaint actually asks the court to enjoin the Custodian and the Secretary from implementing the state-court orders, this is

9

equivalent to seeking an injunction against the state-court order itself. Plaintiffs cannot evade the application of *Rooker-Feldman* through artful pleading. *See, e.g., Johnson v. Draeger Safety Diagnostics, Inc.*, 594 Fed. App'x 760, 764 (3d Cir. 2014) (finding that a federal product liability claim was really a challenge to a state-court judgment and, therefore, barred by *Rooker-Feldman*). Therefore, under the inextricably intertwined test, *Rooker-Feldman* bars Plaintiffs' complaint.

### C. The *Great Western* Test

If *Great Western* replaced the inextricably intertwined test, then under *Great Western* the *Rooker-Feldman* doctrine deprives the court of subject matter jurisdiction when: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Singleton*, 513 Fed. App'x at 252–53. Here, all four prongs are satisfied.

First, Plaintiffs lost when the Chancery Court entered judgment against them on Elting's petitions for a custodian and ordered the sale of TransPerfect over their objections. Further confirming that Plaintiffs lost, those rulings were affirmed on appeal. Second, Plaintiffs complain of injuries caused by state-court judgments, not injuries caused by Defendants' actions. This is best exemplified by the allegations in the complaint that the state-court orders constituted the unconstitutional taking that violated the Fifth Amendment. (*See, e.g.*, D.I. 30 ¶ 48 (alleging that "Chancery identified no public use or public purpose for *its* Forced Sale that would be cognizable under the Takings Clause" (emphasis added)); *Id.* at ¶¶ 144, 146 (alleging that "[a] court-ordered forcible transfer of one person's private property directly to another person constitutes a 'taking'" and "does not constitute a public use or public purpose within the meaning of the Takings Clause of the Fifth Amendment")). As the complaint alleges, the court-appointed Custodian is acting at

10

the direction of the court, and the Secretary has not yet taken any actions related to Plaintiffs. (*Id.* at ¶¶ 14, 50). When defendants are acting under compulsion of a state-court order, that order and not defendants are the source of the injury. *Great Western*, 615 F.3d at 167. Third, Plaintiffs' federal suit was filed a few weeks after the Delaware Supreme Court affirmed the Chancery Court's adverse rulings. Fourth, the bulk of the complaint quotes from various state-court rulings and alleges that they were not reached in accordance with the law, thereby requesting a direct review and rejection of the state-court judgments.

Plaintiffs argue that they have raised an independent constitutional challenge that is not barred by *Rooker-Feldman*. (D.I. 22 at 13-15). But the relief sought in the complaint is a declaratory judgment that Section 226 "as construed by the Delaware courts" and "applied to the Shawes" is unconstitutional. Courts have repeatedly found that a claim is not an independent constitutional challenge when the claim seeks a declaratory judgment that a state court construed and applied a state statute to the facts of the case in an unconstitutional manner.[6] *See Exxon Mobil*, 544 U.S. at 286 (stating that a "Rule could be contested in federal court ... so long as plaintiffs did not seek review of the Rule's application in a particular case"); *Durham v. Haslam*, 528 Fed. App'x 559, 564 (6th Cir. 2013) ("Where the plaintiff alleges that a state court interpreted and applied a state statute to her case in an unconstitutional manner, her complaint is an as-applied constitutional challenge and is prohibited under the *Rooker–Feldman* doctrine."); *Van Tassel v. Hodge*, 565 Fed. App'x 135, 139 (3d Cir. 2014) (holding that *Rooker-Feldman* barred a constitutional claim

---

[6] In contrast, challenges to state-court judgments are independent where plaintiffs allege that the judgment was procured through fraud, misrepresentation, or civil conspiracy. *Robinson v. N.J. Mercer Cnty. Vicinage-Family Div.*, 514 Fed. App'x 146, 150 (3d Cir. 2013); *Johnson*, 594 Fed. App'x at 764. Plaintiffs make no such allegations here.

11

attacking the state court's application of a statute to the facts of her case); *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1264 (11th Cir. 2012) (holding that *Rooker–Feldman* barred a due process claim alleging that the state court erroneously applied and interpreted state statute); *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (holding that *Rooker-Feldman* barred an as-applied due process claim alleging that a state court incorrectly and unconstitutionally interpreted a state statute); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 618–19 (E.D. Pa. 2014) (explaining that as-applied constitutional challenges to state-court orders are barred by *Rooker-Feldman* but facial challenges are not); *Lazaridis v. Wehmer*, 2008 WL 4758551, at *3 (D. Del. Oct. 28, 2008) (finding that *Rooker-Feldman* barred as-applied constitutional challenges to lower court orders). Considering the foregoing, the court finds that Plaintiffs have not raised an independent claim.[7] Therefore, *Rooker-Feldman* deprives this court of subject matter jurisdiction over their claims.

### D.  Interlocutory Orders

Plaintiffs argue that *Rooker-Feldman* is limited to "final judgments." (D.I. 22 at 11-13). Several Third Circuit cases since *Exxon Mobil*, however, have held that district courts correctly dismissed complaints under *Rooker-Feldman* even though state-court proceedings had not yet come to an end before the federal action commenced. *See, e.g., Mikhail v. Kahn*, 572 Fed. App'x 68, 71 (3d Cir. 2014) (agreeing that the district court lacked subject matter jurisdiction under *Rooker-Feldman* to the extent federal plaintiff sought declaratory relief related to orders issued in ongoing state-court divorce and custody proceedings); *Coppedge v. Deutsche Bank Nat'l Trust*,

---

[7]  Because Plaintiffs raised an as-applied constitutional challenge, the court finds inapplicable *Skinner v. Switzer*, 562 U.S. 521 (2011), a case on which Plaintiffs relied. *See Palmer v. Dist. Att'y's Off. of Allegheny Cnty.*, 2017 WL 3481075, at *4 (W.D. Pa. Aug. 14, 2017) (finding *Skinner* inapplicable where plaintiff alleged an "as applied" due process claim).

511 Fed. App'x 130, 132 (3d Cir. 2013) (stating that *Rooker-Feldman* prohibited the district court from sitting in appellate review of a state-court proceeding, which was "currently ongoing"); *Gray v. Martinez*, 465 Fed. App'x 86, 89 (3d Cir. 2012) ("While the state proceedings may have still been ongoing when [plaintiff] commenced this federal civil suit...we are satisfied that the default judgment suffices for the purposes of *Rooker–Feldman*."); *Mayercheck*, 395 Fed. App'x at 842 (affirming dismissal under *Rooker-Feldman* where complaint challenged interlocutory orders governing the distribution of assets in a divorce proceeding); *see also Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dept.*, 973 F.2d 169, 178 (3d Cir. 1992) (stating in dicta that "the interlocutory nature of the ... state court's order does not preclude the application of the *Rooker–Feldman* doctrine."). Notably, in *Exxon Mobil* itself, state-court litigation had not come to end at the time the Third Circuit dismissed the claims under *Rooker-Feldman*. *See Exxon Mobil*, 364 F.3d at 103 (stating that an appeal of the verdict was "currently pending in the Delaware Supreme Court").[8]

In applying *Rooker-Feldman*, the critical inquiry should not be whether the state-court proceedings have come to an end, but whether plaintiffs filed their federal action before or after the adverse state-court rulings on which their claims are based. Here, Plaintiffs commenced their federal suit after the adverse state-court rulings. Thus, the facts of this case are the opposite of *Exxon Mobil*. Ultimately, it makes sense that "*Rooker–Feldman* ... applies to interlocutory orders

---

[8] In light of these decisions, the court does not find persuasive the non-binding cases Plaintiffs cited for the proposition that *Rooker-Feldman* does not apply to interlocutory orders. (*See* D.I. 22 at 13 (citing *Farah v. Lasalle Bank Nat'l Assoc.*, 2016 WL 1162644, at *8-9 (D.N.J. Mar. 23, 2016) (declining to apply *Rooker-Feldman* because final judgment in a foreclosure action was not entered before the federal action commenced); and *Buoni v. Citibank N.A.*, 2016 WL 6106465, at *2 (N.D.N.Y. Oct. 19, 2016) (same)).

issued by state courts," because "it cannot be the meaning of *Rooker–Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000). Considering all of the above, the court finds that *Rooker-Feldman* still bars this action even though the state-court proceedings have not yet come to an end.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (D.I. 11; D.I. 14; D.I. 31; D.I. 32) are granted. The complaint (D.I. 30) is dismissed with prejudice. An appropriate order will be entered.